Richard N. Groves, Attorney at Law   State Bar # 4014
Law Office of Richard Groves
4045 E. Union Hills Drive, Suite 126
Phoenix, Arizona 85050
Telephone: (602) 230-0995 Fax (602) 569-9354
email: azconsumerlaw@cox.net
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Christine M. Kugelman,** an individual ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> **IQ Data International, Inc.**, a foreign ) <br> corporation registered with the State of ) <br> Arizona; **Law Office of William Fife, PLC**,) <br> an Arizona professional corporation; ) <br> **William W. Fife, III**, a licensed Arizona ) <br> Attorney ) <br> ) <br> Defendant(s) ) | **Civil Action #** <br><br> **CIVIL COMPLAINT** |

Plaintiff Christine M. Kugelman, by and through her counsel undersigned, Richard N. Groves, brings this proceeding to challenge the actions of Defendants with regard to their unlawful attempts to collect an alleged consumer debt due another, on the grounds and in the amounts set forth herein.

Plaintiff alleges upon knowledge as to herself and her own acts, and as to all other matters upon information and belief, brings this complaint against the above-named defendant and in support thereof alleges the following:

## **INTRODUCTION**

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt. Plaintiff, an individual consumer,

institutes this action for actual out-of-pocket damages, statutory damages, attorney fees, and the costs of this action against the Defendants to redress the deprivation of the rights granted to the Plaintiff by the Fair Debt Collection Practices Act, *15 U.S.C. §1692* et.seq. (hereinafter the "**FDCPA**", with further citations to the Act to take the form " *§ ___,*" omitting the prefatory "15 USC").

## STATUTORY STRUCTURE

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. *§ 1692* et. seq.

The FDCPA defines a collection "communication" as the conveying of information regarding a debt directly or indirectly to any person through any medium. *§ 1692a(2).* Federal Courts have interpreted this section of the FDCPA to include civil litigation.[1]

The FDCPA defines a "consumer" as any natural person obligated or allegedly obligated to pay any debt. *§ 1692a(3).*

The FDCPA defines a "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money,

---

[1] See ***Heintz v. Jenkins**, 514 U.S. 291 (1995);*also ***Fox v. Citicorp**, 15 F. 3d 1507 (9th Cir. 1994)*; ***Duran v. Credit Bureau of Yuma**, 98 F.R.D. 667 (D. Ariz. 1982*

property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes. *§ 1692a(5).*

The FDCPA defines a "debt collector" is any person or entity that uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *§ 1692a(6).* The U.S. Supreme Court has included attorneys that files civil actions on behalf of clients to collect alleged consumer debts within the definition of "debt collector" under the FDCPA. [3]

The FDCPA requires that an attorney debt collector acquire sufficient personal knowledge, through review of sufficient evidence acquired from the client to prove the merits of the case at trial, prior to signing a civil complaint alleged a consumer debt is due another. [4]

The determination as to whether or not a debt collector's communications to the debtor violates the consumer protections of the FDCPA must be viewed objectively by the Court as a question of law utilizing the standard of the "least sophisticated consumer". [5]

---

3   *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Fox v. Citicorp*, 15 F. 3d 1507 (9th Cir. 1994)

4   *Goldstein v. Hutton, Ingram, Vuzek Gainen, Carrol & Bertolotti*, 374 F. 3d 56 (2nd Cir 2004); *Nielson v. Dickerson*, 307 F. 3d 623 (7th Cir. 2002); *Miller v. Wolpoff & Abramson, LLP*, 321 F. 3d 292 (2nd Cir. 2003); *Daniels v. Baritz*, CV02-7929, 2003 U.S. Dist. LEXIS 7707 (E.D. Penn 2003); *Young v. Njus*, 96 C 4809, 1997 U.S. Dist. LEXIS 11469 (N.D. Ill 1997); *Dalton v. FMA* 953 F. Supp 1525 (M.D. Fl. 1997)

5   *Terran v. Kaplan*, 109 F. 3d 1428 (9th Cir. 1997); *Wade v. Reg'l Credit Ass'n*, 87 F. 3d 1098, *Swanson v. Southern Ore. Credit Serv.*, 868 F. 2d 1222, 1225 (9th Cir. 1988); *Baker v. G.C. Serv. Corp.*, 677 F. 2d 775, 779 (9th Cir. 1982)

Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damages sustained, statutory damages up to $ 1000 per violator, attorneys' fees as determined by the Court and costs of this action. *§ 1692k*

## PARTIES

1   Plaintiff, Christine M. Kugelman, is a natural person and consumer as defined by the FDCPA, *§ 1692a(3)*.

2.   Defendant Law Office of William Fife, PLC (hereinafter "**Law Firm**") is an Arizona professional corporation, engaged in the business of collecting debts alleged to be due another through the use of the mail and civil litigation in Arizona courts, and is a "debt collector" as defined by the FDCPA, *§ 1692a(6)*.

3.   Defendant Law Firm, as a professional corporation, can act only through its officers, employees and agents. Therefore, Defendant Law Firm is liable for the acts of its officers, employees, and agents within the scope of their authority under the doctrine of respondent superior. See *U.S. v. Hilton Hotels Corp*, 467 F. 2d 1000 (9th Cir. 1972) cert. denied *409 U.S. 1125 (1972)*; also *Restatement (Second) of Agency, § 343*.

4.   Defendant William W. Fife, III (hereinafter "**Fife**") is a natural person, and a licensed Arizona attorney, Ariz. Bar # 024379.

5.   Plaintiff believes, and therefore alleges herein, that Defendant Fife created the collection policies and procedures utilized by Defendant Law Firm at the time of the violations of the FDCPA alleged by Plaintiffs in this action.

6. Plaintiff believes, and therefore alleges herein, that Defendant Fife manages the daily collection operations of Defendant Law Firm, approving the application of its collection policies and procedures to an alleged debtor.

7. When a corporation debt collector's employees violate the FDCPA, the corporation's executives are personally liable for the violation if they materially participated in it. ***United States v. ACB Sales & Serv., Inc.,*** *590 F. Supp. 561, 575 (D. Ariz. 1984) (citing **Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.** 467 F. Supp. 842, 852 (N.D. Cal. 1979 ) aff'd sub nom.* ***MurphyTugboat Co., v. Crowley,*** *658 F. 2d 1256 (9th Cir. 1981), cert. denied 455 U.S.1018 (1982).*

"Participation" includes approving an employee's action. ***Chatlovsky v. Heldenbrand & Associates,*** *CIV4-310 PHX JWS (D. Ariz. 2004).*

8. Defendant Fife is an employee of Defendant Law Firm, who personally regularly uses civil litigation in the attempt to collect debts allegedly owed or due another. Defendant Fife is a "debt collector" as that term is defined by the FDCPA *§ 1692a(6).*

9. Defendant IQ Data International, Inc., (hereinafter "**IQ**") is a foreign corporation registered with the Arizona Department of Financial Institutions as a collection agencies. Defendant IQ is a "debt collector" as that term is defined by the FDCPA *§ 1692a(6).*

10. Plaintiff alleges that at all times relevant herein, each of the Defendants were, and are now, the agent, servant, employee and/or other representative of the other Defendants, and in doing the things herein alleged,

were acting within the scope, purpose and authority of such agency, service, employment and/or other representative capacity with the permission, knowledge, consent and ratification of the other Defendants. Any reference hereinafter to "Defendants", without further qualification, is meant by the Plaintiffs to refer to each Defendant named above.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is invoked pursuant to *15 U.S.C. § 1692k(d)*, and *28 U.S.C. § 1331.* Venue is conferred on this Court by *28 U.S.C. § 1391(b)-(c)*, and *28 U.S.C. § 1991(b)*.

## FACTUAL ALLEGATIONS

## STATEMENT OF PREDICATE FACTS

12. That on about July 31, 2007, Plaintiff entered into a residential lease agreement with Monarch Greenwood Venture, L.P., doing business as Monarch at Tempe (hereinafter "**creditor**") for her personal residence. The financial obligation in this residential lease were primarily for personal, family or household purposes, and was therefore a "consumer debt" as defined by *15 U.S.C. §1692a(5). (*See copy of lease contract attached hereto and incorporated herein by reference as Plaintiff's Exhibit A).

13. That on or about September 24, 1008, Defendant Fife, on behalf of Defendant IQ, filed a civil collection complaint in Kyrene Justice Court, *CC2008219701*, IQ Data International, Inc., a foreign corporation, as assignee of Monarch at Tempe Apartments v. Christine M. Kugelman for monies

6

allegedly due for breach of the lease agreement. (See copy attached hereto and incorporated herein by reference as Plaintiff's Exhibit B).

14. That Exhibit B is a "collection communication" as that term is defined by the FDCPA *§ 1692a(2)*.

15. That on or about November 26, 2008, Defendant Fife filed in the justice court civil action, an exhibit entitled "Revised Move Out Statement" attached to Defendant IQ's Initial Rule 26.1 Disclosure Statement, specifying the amount alleged due. (See copy attached hereto and incorporated herein by reference as Plaintiff's Exhibit C).

16. That included in Exhibit C is a charge noted as currently due of "40% collection fees $ 766.88"

17. That Exhibit A, the contract between the parties, specifically notes:

> "12. DEFAULT   The failure of either Resident or management fully perform this Rental Agreement in any manner shall entitle either party to take all actions against the defaulting party as shall be provided by law.  All costs, attorney's fees, and other expenses in enforcing this Agreement shall be paid to **the prevailing party by the losing party**."
> (emphasis added)

18. That there has been no judicial adjudication as to monies allegedly due by Plaintiff.

19. All of Defendants' actions occurred within one year of the date of this Complaint.

20. At no time have Plaintiffs expressly, or impliedly, waived any of her rights to proceed in this action for the violation of the FDCPA.

7

## CAUSES OF ACTION - FDCPA VIOLATIONS

21. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs as though fully pleaded.

22. Defendants' collection communications have violated at least the following provisions of the FDCPA:

> a.) Violation of *15 U.S.C. §1692e* (including but not limited to *15 U.S.C. §§§§1692e(2)(A), 1692e(2)(B),* and the "least sophisticated consumer standard", by using objectively false, deceptive or misleading representations or means in connection with the collection or attempted collection of a consumer debt;
>
> b). Violation of *15 U.S.C. §1692e, §1692e(2)(A),* and *15 U.S.C. §1692g(a)(1)*, by falsely representing the amount of the debt currently due;
>
> c). Violation of *15 U.S.C. §1692e(10),* by using false representations or deceptive means to collect or attempt to collect a debt, or information about a consumer;
>
> d). Violation of *15 U.S.C, §1692f* collecting or attempting to collect amounts that are not expressly authorized by the agreement creating the debt or permitted by law
>
> e) Violation of *15 U.S.C. §1692f* (including but not limited to *15 U.S.C. §1692f(1)* by using unfair or unconscionable means to collect or attempt to collect a debt.

23. That upon information and belief, defendants' collection efforts have resulted in additional violations of the FDCPA

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in her favor and against each and every Defendant, jointly and severally, for:

8

a. An Order of this Court that Defendants have violated the FDCPA;

b. Actual out-of-pocket damages in an amount to be proven at trial, pursuant to *15 U.S.C. § 1692k(a)(1);*

c. Statutory damages of $1,000, pursuant to *15 U.S.C. § 1692k(a)(2)(A),*

d. Costs of this litigation,

e. Reasonable attorney's fees at the rate of $ 350 per hour for hours reasonably expended by Plaintiffs' attorney, pursuant to *15 U.S.C. § 1692k(a)(3),* the "private attorney general" doctrine.

f. Such other relief as the Court may be just and proper.

RESPECTFULLY SUBMITTED this 5th day of January, 2009.


                                        by  s/Richard N. Groves
                                        Richard N. Groves,
                                        Attorney for Plaintiff

**PLAINTIFF'S**

**EXHIBIT A**

Greenwood Village Apartments, 



**Greenwood Village Apartments**
**4505 S. Hardy Drive • Tempe, AZ 85282 • (480) 820-1634 • 480-820-9648 Fax**

# APARTMENT RENTAL AGREEMENT (LEASE)

This Apartment Rental Agreement is made this **30th** day of **July, 2007** by and between **Greenwood Village Apartments** (hereinafter referred to as "Owner") and the following person(s):

| Lease Holder(s): |
| --- |
| **Lepore Hyacinth and Christine M. Kugelman** |

Owner agrees to rent the herein below described Premises to only the above listed persons and if more than one person, each shall be jointly and severally liable hereunder and all are collectively referred to as "Resident".

| Premises: | Apartment # | Reserved Parking # |
| --- | --- | --- |
| **Greenwood Village Apartments, 4502 S. Hardy Drive, Tempe, Arizona 85282** | **117** | **202** |

The following items of furnishings and personal property are included herein: **Stove, Microwave, Refrigerator, Dishwasher, Washer and Dryer, Ceiling Fan in Master Bedroom (if applicable)**.

| MONTHLY RENT AND DEPOSITS | | | |
| --- | --- | --- | --- |
| **MONTHLY RENT** | | **FEES AND DEPOSITS** | |
| Rent | $810.00 | **NON-REFUNDABLE FEES** | |
| Subtotal | $810.00 | Administrative Fee | $150.00 |
| Sales Tax (1.8%) | $14.58 | Screening Fee | $0.00 |
| Total Due Monthly | $824.58 | **REFUNDABLE DEPOSITS** | |
| | | Security Deposit | $400.00 |
| | | Total Deposit | $400.00 |

1. **PAYMENTS AND PRORATIONS:** Upon execution, Resident agrees to pay the Full Monthly Rent plus Taxes, Security Deposit and Non- Refundable Administrative Fee in the form of a money order or bank draft. No cash can be accepted. Resident shall pay the prorated rent and taxes of **$27.49** for the partial month and will receive **$0.00** off as a move-in special for a total move-in cost of **$27.49** ending on **July 31, 2007**. Resident agrees to pay in advance the total due monthly in the form of a check or money order, on or before the first calendar day of each and every month, at the Apartment Community or at such other place as Management may designate by written notice to the Resident. If Resident chooses to transfer apartments, a transfer fee will be assessed and is subject to Management approval.

   1. If Resident is given any rent deduction, rebate, bonus, property or anything of value, as an inducement or incentive to enter into this agreement and the Resident abandons the tenancy created herein or the tenancy is terminated for any reason whatsoever, prior to the expiration date of this agreement, it is agreed that Management may, in its sole discretion, deduct the fair market value of the inducement or incentive from the refundable security deposit. The Resident agrees that in the event the refundable security deposit is less than the fair market value of the inducement or incentive the balance shall be immediately due and payable as rent.

2. **TERM:** The term of this Rental Agreement shall be for **1 year and 2 days** commencing on **July 30, 2007** and ending on **July 31, 2008**. After the ending date this Agreement automatically continues on a month to month basis until a new lease is executed or until either the Management or Resident terminates this Agreement by delivering to the other a written termination notice at least thirty days prior to the end of any calendar month. Upon expiration of the Initial lease term, the contract automatically enters into a Month to Month Agreement which is defined at current market rate and a premium of **$100.00** plus **1.8%** tax unless otherwise noted.

3. **DEPOSITS:**
   1. **Security Deposit:** Concurrently with the execution hereof, Resident agrees to pay Management the Security Deposit, in full, as security for the faithful performance of Resident's obligations hereunder, Management shall be entitled to deduct from the Security Deposit the sum of **$5.00** for each apartment key not returned by Resident upon vacating the Premises, such amounts as may be necessary to remedy Resident's defaults in the payment of rent, other charges equivalent to rent and utility charges, and such other amounts as may be necessary to compensate Management for damage to the Premises occasioned by Resident's non-compliance with the provisions of paragraph 9 below. The taking or application of security as provided herein shall not preclude Management from exercising any other available remedy for breach of the Lease or Resident's violation of the Arizona Residential Landlord and Tenant


Initials 

1



Greenwood Village Apartments 

Act. No portion of the Security Deposit may be used by Resident as a credit for rent owed prior to termination or expiration of this Lease. Resident shall not be entitled to any interest on the Security Deposit.

2. **Administrative Fee:**   Resident has paid Management the Non-Refundable Administrative Fee, which shall not be refunded under any circumstances.

3. **Conditions for Refund:**   Notice: Resident must give to Management a written notice of intent to vacate, not less than **THIRTY (30) days prior** to the ending date of this Apartment Rental Agreement or **THIRTY (30) days prior** to any calendar month if the Apartment Rental Agreement is on a month-to-month basis. The full term of the Apartment Rental Agreement must have ended. At the time of move-out, all rents must be paid in Full. The Resident must leave the apartment in a clean and habitable condition, normal wear and tear excepted. Provisions for move-out inspection will be made by Management on receipt of the **written THIRTY (30) day notice** of intent to vacate. The Resident must supply Management complete information on forwarding address for return of deposit. With full compliance with the Apartment Rental Agreement, with FULL compliance of the Rules and Regulations or the House Rules and/or attached addendum, FULL compliance of all applicable statutes and upon demand for return of the refundable security deposits Management may apply those deposits to accrued rent and damages, if any, as set out in Section 3.1 above, and shall timely deliver to the Resident any remaining balance of the refundable security deposit.

4. **LATE CHARGES:**   Rent is due on the **1st** day of each month. If the total monthly rent is not received by 6:00 P.M. on the **3rd** day of any month, a late charge of **$25.63** plus **1.8% tax will be added to rent.** An additional charge of **$5.00** plus **1.8%** tax shall be added for each day thereafter rent remains unpaid. If rent is paid late it must be in the form of certified funds, for example Money Order and/or Cashiers Check.

5. **RETURN CHECK CHARGE:**   Resident agrees to pay as additional rent an administrative fee of **$25.63** for any check that is dishonored for payment. This fee is in addition to applicable late charges. Repayment of rent and fees must be in the form of certified funds, for example Money Order and/or Cashiers Check.

6. **UTILITIES:**   In addition to the rent, Resident shall pay a proportional share of all public utilities charged against the Premises including water, sewer, and garbage collection. Resident agrees to pay all required deposits for gas and electricity and furnish Management a receipt prior to accepting occupancy.

7. **INDEMNITY:**   Management shall not be liable and Resident shall save Management harmless from any and all claim losses, demands, or other liability whatsoever, for any damage or injury however suffered by or occurring to any person, including, without limitation, guests at the Apartment Community which arise or are caused by any act of commission or omission of the Resident, Resident's occupants, family, guests, invitee or pets. Notwithstanding anything appearing in this paragraph to the contrary, the Resident does not agree to the exculpation or limitation of any liability of Management arising under law or to indemnity Management for that liability or costs connected therewith.

Resident is informed that Management's insurance does not cover Resident's property, acts, or omissions, IT IS RECOMMENDED THAT RESIDENT OBTAIN RENTER'S INSURANCE.

8. **ASSIGNMENT:**   Resident shall not assign this Agreement or sub-let the Apartment or any part thereof.

9. **CONDITION AND CARE OF PREMISES:**
   1. Resident shall not change locks, paint, decorate or alter in any way the Premises without the prior written permission from Management and shall not interfere with the quiet use and enjoyment of other residents of the community. Further, Resident shall comply with all state statutes and city ordinances, which are applicable to the Premises and common areas. Resident has carefully inspected the Premises and finds them to be in a clean, habitable, undamaged condition except as may be noted on the Apartment Inspection/Check out Report. This Report will be used to determine refund of security deposit amount at the end of Resident's tenancy.

      Management shall not be liable to Resident's family, invitee and occupants for any damages to person or property caused by the act or neglect of any other resident or non-resident at the Apartment community.

   2. Resident agrees to exercise reasonable care in the use of the Premises, furnishings and Apartment Community and to maintain and redeliver the same in a clean and safe condition, free from damage, unsightly debris, equipment or decor. Resident agrees to pay for all repairs, replacements and maintenance caused by due and payable immediately or shall be regarded as additional rent to be paid no later than the next date on which rent is due following such repairs. Resident shall immediately report to Management in writing when any locks, equipment, fixtures furnishings or portion of the Premises have been damaged or are out of repair. Any damage to the Premises, fixtures or furnishings contained therein which is not otherwise explained in writing to Management within three (3) days after occurrence thereof, shall be presumed to have resulted from the Resident's neglect. Resident shall not allow an un-drivable vehicle to remain on the common areas or any other portion of the Apartment Community for more than 24 hours. No car repairs are to be made in or on the common areas or any other portions of the Apartment Community. Any vehicle

 Initials 

2



Greenwood Village Apartments 

   inoperable or in disrepair shall be subject to towing at the vehicle owner's expense.

3. Resident acknowledges that the use of the swimming pool area, the lounge, and other related amenities at the Apartment Community being furnished without charge by Management and that no guard or other supervision over the use of said swimming pool and facilities will be provided; and, fully understanding the risks associated with the fore going, Resident hereby assumes for himself, his family, occupants, and guests any and all risks associated with the use of said pool and facilities, and agrees that Management shall not be liable for any harm sustained by Resident, his family occupants, or guests in connection with said risks. Resident further understands and agrees that the use of any facility or amenity on the Apartment Community is restricted to Resident and family, and that express consent must be given by Management prior to another person's use of such facility or amenity.

10. **USE:** The leased Premises shall be occupied and used only as a residential dwelling unit, any other use is prohibited.

11. **ACCESS:** Resident shall allow Management access at all reasonable times to the Premises for the purpose of inspection or to show said apartment to prospective purchasers, mortgagees, or any other persons having legitimate interest therein, or to make necessary repairs, or improvements. Management shall give Resident at least two (2) days notice of Management's intent to exercise its right of access except in cases of emergency, or where notice shall be impractical, or where the Resident has abandoned the Premises or has failed to properly maintain the Premises.

12. **DEFAULT:** The failure by either Resident or Management to fully perform this Rental Agreement in any manner shall entitle either party to take all actions against the defaulting party as shall be provided by law. All costs, attorney's fees, and other expenses in enforcing this Agreement shall be paid to the prevailing party by the losing party.

13. **SUBORDINATION:** This Agreement is and shall remain subordinate of any ground lease, mortgage, trust deed, or other encumbrance or security instrument now existing or hereafter to be placed upon the Premises and to any modifications, extensions, replacements and advances in connection therewith.

14. **ABANDONMENT:** If the resident abandons his tenancy, as defined in A.R.R. #33-1370(H), and the management reasonably determines the cost of removing, storing and selling the Resident's personal property would exceed the amount that would be realized from the sale thereof, Management may, at is option, destroy or otherwise dispose of the Resident's property.

15. **NON-WAIVER:** Failure of Management to insist upon the strict performance of the terms covenants and conditions herein contained shall not be deemed a waiver of any of Management's rights or remedies herein. If any court declares a particular provision of this Agreement to be invalid or illegal, all other terms of this Agreement will remain in effect and both Management and Resident will continue to be bound by them.

16. **BINDING EFFECT:** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Management and Resident.

17. **DISCLOSURE OF MANAGEMENT AND NOTICES:** <u>Greenwood Village Apartments</u>, with offices at <u>4505 S. Hardy Drive, Tempe, AZ  85282</u>, is authorized to act on behalf of the owner of the Apartment Community for purposes of service of process and for receiving or receipting notices or demands. To be effective, all notices, demands and other communications directed to Management shall be in writing and personally delivered during office hours, or mailed by certified mail, return receipt requested to the above address, or to the resident manager at his/her office in the Apartment Community. Service of legal process should be made upon Management through its statutory agent, as registered with the Arizona Corporation Commission.

The Resident Manager of the Premises is:

| Manager | Address | Phone # |
|---|---|---|
| Ashleigh Dunham | 4505 S. Hardy Tempe, AZ 85282 | 480-820-1634 |

18. **HOUSE RULES:** The rules provided in Schedule A, the receipt of which is hereby acknowledged, are deemed a part of this Agreement and a breach of any rule by Resident or guests shall constitute a default hereunder.

19. **FIRE, CASUALTY AND TAKING:** In the event the Premises shall be damaged or destroyed by fire, casually or taking, the monthly rent payable hereunder by Resident shall be reduced or abated to the extent that such damage or destruction renders the Premises untenantable, until such time as the Premises, or what remain thereof after a taking, shall have been repaired or restored to a tenantable condition. Nothing contained herein, however, shall require or be deemed to require Management or the owner of the Apartment Community so to restore or repair the Premises.

20. **TERMINATION:** If Resident terminates the term of agreement for any reason, the Resident shall be obligated to give **one month's (30 days) written notice**, as stated above, and, in addition to the **rent due for the notice period and** pay a

 Initials    3   

Greenwood Village Apartments 

buy-out fee in equal to one month's unconcessed rent. The buy-out fee will be due at time of move-out. Further, the Resident shall be obligated to pay any move-in incentives given at time of move-in as per section 1.1 & 22. The Resident also agrees to leave apartment clean and undamaged less normal wear and tear.

21. Properties will be presented in compliance with Federal, State and Local Fair Housing laws and regulations. Residents may obtain a free copy of the Arizona Residential Landlord and Tenant Act from the Secretary of State's office.

22. **SPECIAL PROVISIONS:** Resident is being credited $0.00 as a monthly concession. In the event the resident does not complete the term of the lease agreement, all concessions received will become due in full to **Greenwood Village Apartments** prior to move out.

23. _____ (Initials) Resident and landlord agree that in the event of any litigation including a Special/Forcible detainer action or civil litigation that the parties waive their rights to a jury and agree that the matter may be heard by a judge.

RESIDENT HAS READ AND RECEIVED AN EXECUTED COPY OF THIS AGREEMENT, INCLUDING THE TERMS ON THE REVERSE SIDE, APARTMENT INSPECTION/CHECKOUT REPORT, AND THE COMMUNITY RULES AND REGULATIONS, WHICH RESIDENT AGREES TO ABIDE BY INCLUDING ANY AMENDMENTS THERETO. THIS RENTAL AGREEMENT IS A LEGALLY BINDING CONTRACT.

Apartment #117

_____ _____ _____ 7/3/07
Lepore Hyacinth (Resident)   Date   Christine M. Kugelman (Resident)   Date

_____ _____
(Owner/Agent)   Date


Initials _____

4

**PLAINTIFF'S**

**EXHIBIT B**

```
WILLIAM W. FIFE III, #024379
LAW OFFICE OF WILLIAM FIFE, PLC
1425 S. Higley Road, Suite 104
Gilbert, Arizona 85296
PHONE (480) 850-6541
FAX (480) 619-6238
```

Attorney for Plaintiff

IN THE KYRENE JUSTICE COURT,

IN AND FOR THE COUNTY OF MARICOPA STATE OF ARIZONA

| | |
|---|---|
| IQ DATA INTERNATIONAL, INC., a foreign corporation, as Assignee of MONARCH AT TEMPE APARTMENTS,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTINE M KUGELMAN AND JOHN DOE KUGELMAN, Individually, and as husband and wife,<br><br>    Defendants. | Case No.: CC2008219701<br><br>**COMPLAINT**<br><br>(Breach of Contract) |

Plaintiff, IQ DATA INTERNATIONAL, INC. by and through counsel undersigned, for its Complaint alleges as follows:

I

Plaintiff is, and at all material time was, a corporation organized and existing under the laws of the State of Washington with its principal place of business located at 1000 Everett Mall Way, Everett Washington and is the assignee of MONARCH AT TEMPE APARTMENTS.

II

Defendants are adult residents of 700 W UNIVERSITY DR #152, TEMPE, AZ 85281 and, at all times material hereto, Defendant, CHRISTINE M KUGELMAN, was acting on behalf of and for the benefit of the marital community, if any.

III

The events herein complained of occurred within the County of MARICOPA, State of Arizona. Jurisdiction and venue are appropriate in this Court.

IV

That on or about 07/31/2007, Plaintiff and Defendant entered into a written contract.

V

The consideration set forth in the agreement was fair and reasonable.

VI

Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract.

VII

That on or about 11/17/2007 the Defendant breached the contract.

VIII

By reason of Defendant's breach of the contract, Plaintiff has suffered damages in the amount of $1,915.95.

IX

By the terms of Section 12 of the Lease Contract, the Plaintiff is entitiled to recover its reasonable attorney fees and costs incurred in the enforcement of the provisions in the contract. By reason of Defendant's breach, the Plaintiff has been forced to secure the services of the Law Office of William Fife, PLC to prosecute this lawsuit.

X

As this suit arises out of contract, pursuant to A.R.S. § 12-341.01 Plaintiff is entitled to its reasonable attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For Compensatory damages in the sum of $1,915.95;
2. For interest at the legal rate on the sum of $1,915.95 from 11/17/2007 and after until the date the judgment is satisfied;
3. For reasonable attorney fees incurred in the prosecution of this matter of not less than $639.00;

<ACCT-NMBR>

4. For costs of suit incurred herein; and

5. For other and further relief that the court deems just and proper.

Dated this 24th day of September, 2008

_____
William W. Fife III, Esq.
**Law Office of William Fife, PLC**
Attorney for Plaintiff